## ROWEN v. CHICAGO GREAT WESTERN RAILWAY COMPANY, Appellant.

### Division Two, October 17, 1906.

1. **RAILROAD: Gates: Killing Stock.** Although the gate constructed by the railroad at a farm crossing may not have conformed to the requirements of the statute, yet unless its negligence in that respect was the proximate cause of the killing of plaintiff's stock which got onto the track, it is not liable. To entitle plaintiff to recover in such case it must appear, not only that the railroad was negligent in failing to erect and maintain a gate such as is required by the statute, but also that the injury to his stock was the result of such failure.

2. ———: ———: ———: **Left Open by Some One.** Where the evidence clearly shows that the gate was left open by some one, without the consent or knowledge of the railroad, and because of that fact the stock got upon the track and were killed by passing trains, the railroad is not liable, whether the gate was constructed in the way the statute requires or not.

Transferred from Kansas City Court of Appeals.

REVERSED.

*Kelso, Schooler & Kelso* for appellant.

(1) Instruction 1 for plaintiff is misleading, does not declare the law, and was not based upon the evidence. It proceeds entirely upon the theory that the company is liable unless it maintained a gate at the alleged farm crossing, fastened by a latch or hook. It entirely ignored the fact that although the gate (as the testimony showed) was hung on a cleat and fastened by being slid between two posts, yet was equally as secure as if fastened with hook or latch. In fact, this instruction, which was the only one given for plaintiff in relation to the gate, is not justified by the evidence in the case; it is too narrow; it did not submit the issues made by the pleadings and the evi-

dence, in that the evidence showed that the gate was open, and further tended to show that the gate was left open by plaintiff's hired man.    The instruction was silent as to these facts.    Again, there was no evidence whatever to the effect that it was by reason of the defective fastenings upon the gate the stock escaped upon the track and were killed, but, upon the contrary, the entire evidence points to the fact that the gate was opened and left open by some person, and by reason of that fact the stock escaped through said gate upon the track of defendant and were killed.    The instruction is a mere abstraction and not predicated upon the evidence and should not have been given. Fairgrieve v. Moberly, 29 Mo. App. 155; Zwisler v. Storts, 30 Mo. App. 175; Bradley v. Railroad, 138 Mo. 307.    (2)    Counsel for defendant do not contend that the gate in controversy was fastened with a hook or latch, but do insist that, under the law as construed and defined by both the Supreme Court and the Courts of Appeals in this State, it was not necessary and requisite that it should have been so hung on hinges or fastened with hook or latch in order to constitute it a lawful gate.    Harrington v. Railroad, 71 Mo. 384; Fitterling v. Railroad, 79 Mo. 504; Ridenore v. Railroad, 81 Mo. 227; Binicker v. Railroad, 83 Mo. 660; Nicholson v. Railroad, 55 Mo. App. 593; Clardy v. Railroad, 73 Mo. 576; Kavanaugh v. Railroad, 163 Mo. 54. No other conclusion can possibly be reached than that the trial court erred in refusing defendant's second instruction, unless the court adopts the theory of the plaintiff, that is, that the statute requiring railroad companies to fasten their gates with hooks and latches is mandatory—is penal, and no excuse can be shown as a defense.    Such is not the law now, and never was in this State.    The contrary has been repeatedly held. Harrington v. Railroad, 71 Mo. 384; Kavanaugh v. Railroad, 163 Mo. 54; Clardy v. Railroad, 73 Mo. 576;

Binicker v. Railroad, 83 Mo. 660; Kavanaugh v. Railroad, 163 Mo. 54. Negligence will not be imputed to defendant for failure to discover that the gate was opened during the night. Box v. Railroad, 58 Mo. App. 359; Vineyard v. Railroad, 80 Mo. 92; Binicker v. Railroad, 83 Mo. 663.

*Lingenfelter & Hudson* for respondent.

(1) The late case of Kavanaugh v. Railroad, 163 Mo. 54, cited by appellant, merits some consideration. Respondent maintains that the Kavanaugh case is not decisive of the case at bar. In that case the gate was placed in the fence as a part of the panel thereof the same year the road was constructed and during the year the accident occurred, and it was not claimed by the plaintiff in that case that the gate was in any way defective, except that it was large and unwieldy, to which the land-owner made no objections at the time it was placed in the fence. The proximate cause of the injury in that case, as the court well said, was the fact that the gate was left open. In the case at bar the undisputed testimony is, that the gate was erected in the year 1886 or 1887, some ten or eleven years prior to the accident, and had never been repaired; that it was loosely constructed and old and dilapidated and rested on the ground at one end and was considerably sagged. Its defective condition was unquestionably the approximate cause of the injury. Charley Graham, witness for plaintiff, testified as follows: "Q. Now what do you say about a horse catching his foot in the gate? Would he be able to open it by pulling backward? A. I have opened the gate enough to believe that a horse could have opened it as easily as I can. Q. Explain how it could be opened by a horse? A. Well, if a horse got its foot fast in front of the brace and pulls backward it would fasten its foot in such a manner as to give it sufficient purchase to open

Rowen v. Railroad.

it." A defective gate would be more likely to be opened by the horse, or be blown open by the wind, or left open by third parties, than one in compliance with the law. The negligence of the defendant in not making a lawful gate was therefore the proximate cause of the injury. (2) No notice in this case was required, as its defective condition was co-existent with its construction, or at least its defective condition had continued a sufficient length of time to impute notice. Duncan v. Railroad, 91 Mo. 67; Kavanaugh v. Railroad, 161 Mo. 54.

FOX, J.—This cause was certified to this court by the Kansas City Court of Appeals, for the reason that the conclusions reached and announced by a written opinion are in conflict with a decision by the St. Louis Court of Appeals in the case of Kavanaugh v. Railroad, 75 Mo. App. 78, which was also certified to this court because one of the judges held that the ruling of the majority was in conflict with prior decisions of that court. This cause reached the Kansas City Court of Appeals by appeal on the part of the defendant from a judgment in the circuit court of Worth county in favor of plaintiff. The opinion announced by the Kansas City Court of Appeals was by BROADDUS, J., in which the entire court concurred. It is apparent therefore that had it not been for the Kavanaugh case decided by the St. Louis Court of Appeals, which was afterwards certified to this court and decided by this court, 163 Mo. 54, the present controversy would in all probability have never reached this court. It is here and the record is before us for consideration.

OPINION.

We have carefully examined the evidence in detail as developed at the trial of this cause, and find that the statement of the controlling facts as made by the

198 Sup—42

learned judge of the Kansas City Court of Appeals is substantially correct; therefore the solution of this controversy must be sought in the consideration of the correctness of the conclusions reached and announced by the Kansas City Court of Appeals upon the state of facts disclosed by the record. The opinion in full of Judge BROADDUS was as follows:

"The finding of the jury and judgment thereon was for the plaintiff and defendant appealed.

"The suit is for the killing of plaintiff's horses on defendant's tracks, they having escaped from plaintiff's enclosed premises through a gate at a farm crossing. There is no dispute as to those facts. It is shown by all the evidence that the track of defendant runs through plaintiff's land and that the same is fenced; that at the point where the plaintiff's horses escaped from his premises, the defendant had erected a gate for his use in crossing its track, as his farm was situated on both sides of said track; and that said gate was not a statutory gate, not being hung and fastened in the manner required by statute, but otherwise as to construction was a proper gate. The gate in controversy was not hung on hinges or fastened by hooks or latches, but was suspended at one end upon a cleat which was attached to two upright posts set up in the ground, and was secured by shoving the other end between two other upright posts. There is little or no controversy about the character of the gate except that some of the witnesses state that the gate was old and somewhat dilapidated—others, that it was substantially a good gate. The horses were killed during the night of November 4, 1897. In the evening prior, about five o'clock, the gate was closed. When Corbett and other witnesses were informed that stock were on the track they went to the place about eleven or twelve o'clock of the night mentioned, saw the stock that had been injured and found the gate wide open.

"The witnesses generally agree that the gate as constructed did not easily open and shut—and judging from a description of the gate such must have been the fact. The proper way to open said gate was to slide it back over the cleat until its weight was about equally divided on each side of the cleat and then it could be easily opened or shut. These undeniable facts conclusively show that the horses did not open the gate in the manner it was found by the witnesses. There was an attempt to show that the gate was not closed on the evening preceding the killing of the stock, or that the gate was not securely fastened.

"The physical facts as well as the testimony of witnesses show that the gate was intentionally opened by some person and left open.

"Certainly, the gate as constructed and hung was not such as the statute required. Under the statute in question, for failure upon the part of railroads to erect and maintain the required fences and gates they are liable for all damages 'which shall be done by its agents, engines or cars to horses, etc., occasioned by the failure to construct and maintain fences' (which also includes gates).

"The facts in this case are very much like those in Kavanaugh v. Railroad, 75 Mo. App. 78, except in that case the gate was secured by hook and staple, and the court came to the conclusion that the gates (there were two gates in that case) must have been opened by some person passing through during the night, and upheld the finding of the trial court, which was for the plaintiff.

"In the case of Morrison v. Railroad, 27 Mo. App. 418, the facts were greatly different. There it was shown that the gate was made of wire and boards and one of the posts had entirely rotted off, so that the gate was suspended by the wires and planks, and it had no latch or other fastenings. The only way it

would open and shut was by lifting up the gate and post and placing it in position. 'This was so troublesome to persons passing through, that the result was that *the gate, as a rule, stood open;* and the plaintiff kept his horses up to avoid their escaping through this gate onto the railroad track. This gate had been in this condition for two or three months prior to the injury complained of.' Judge PHILIPS, who delivered the opinion of the court, refers to the case of Ridenore v. Railroad, 81 Mo. 227, and distinguishing that one from the one he was considering, uses the following language: 'But the chief difficulty, in my mind, is as to one element of fact in the case at bar, which distinguishes it, in a marked degree, from all others to which attention has been directed.' He then states facts as given above. The case was for negligence under the statute for carelessly and negligently suffering the gate to be left out of repair. The court found that by reason of the defective condition of the gate, 'it was habitually left open,' 'as a rule was left open.'

"In McMillan v. Railroad, 70 Mo. App. 568, the gate in controversy was hung on hinges and secured by a hook which fitted into a loop made by a wire twisted around the post. The fastening of the gate had a play of two or three inches up and down. The gate would fly open by force of the wind or other slight pressure. Judge SMITH in delivering the opinion of the court showed the similarity of that case to that of Freet v. Railroad, 63 Mo. App. loc. cit. 554, and makes this significant statement: 'Indeed, there is but one conclusion to be drawn from the evidence, and that is that the gate got open for want of sufficient fastening.'

"In Freet v. Railroad, supra, Judge SMITH also delivered the opinion of the court, and in commenting on the gate in question, said: 'The gate was old and greatly out of repair. One of the posts and a hinge of the gate were loose. The appliances for fastening

Rowen v. Railroad.

the gate were a hook and staple, but these could not be used on account of the condition of the post on each side of the gate. The defendant knew of the insecure condition of the gate. Its section man, who passed along every day, saw its condition of insecurity. He furnished a piece of wire which was used by him in fastening the gate.' He concluded that the gate came open as a result of the insecure fastening.

"In Duncan v. Railroad, 91 Mo. 67, the evidence was similar to that in the case of Morrison v. Railroad, supra. The gate in question there had no kind of fastening at any time. Sometimes it was fastened with a rail or sticks, but neither would prevent it from being blown open by the wind. The natural inference was that it got open because it had no fastening.

"We can find but one cause in all the books parallel with the one at bar, and that is Kavanaugh v. Railroad, supra, which has been certified to the Supreme Court of the State because one of the judges held that the ruling of the majority was in conflict with prior decisions of said court.

"We do not think the true rule has been laid down in that case, and it is not sustained upon either principle or precedent.

"It appears to us that the conclusion of the court therein is founded alone upon theory and not upon evidence, and as such has been condemned. [See Fitterling v. Railroad, 79 Mo. 509; Rothwell v. Railroad, 59 Iowa 192.]

"The concluson of the judge who delivered the opinion of the court that because the gate in question was a sliding gate; that it was securely fastened the evening preceding the night of the injury; and that it was opened and left opened by some person during the night, but that it would not have been so left open if it had not been the kind of gate described, but a statutory gate, we believe is founded upon theory only,

and is not necessarily deducible from the facts of the case. The person who opened and left open the gate may or may not have closed it if it had been any other kind of gate.

"The additional facts that the crossing was used by persons in the neighborhood, and that section men and tramps were in the habit of going through the gate do not help the conclusion to any great extent. It was a mere theoretical possibility.

"In the case at bar the gate was found wide open just after the injury. The person who took the trouble to open it to its fullest extent may have been more inclined to have shut it if it had been a statutory gate, but it is not a necessary inference that he or she would have done so. And this is all the case has to stand on.

"The gate in question had never previously to the injury complained of been found open, and there had been no complaint that it was insecure. It does not appear that the injury in this case was caused by the failure of the defendant to erect and maintain the required gate, but was the direct result of the wrongful act of some persons without defendant's knowledge and consent, leaving the gate open, through which plaintiff's horses escaped onto defendant's track and were killed. [Ridenore v. Railroad, 81 Mo. 227.]

"It follows, therefore, that defendant's first instruction which was a demurrer to plaintiff's case, should have been given. The conclusion arrived at dispenses with the necessity of deciding whether the court committed error in overruling defendant's motion for a continuance. The cause is reversed. All concur.

"Certified to the Supreme Court."

The Kavanaugh case, criticised in the foregoing opinion, was subsequently decided by this court and the conclusions reached by this court are in harmony with the views expressed by the Kansas City Court of Appeals.

Learned counsel for respondent insist that the proximate cause of accident was the defective gate and on account of the negligence of the defendant in failing to construct a gate in conformity to the statute plaintiff was entitled to recover, and the judgment should be affirmed.

To entitle plaintiff to recover in this action it must first appear that defendant was negligent in failing to erect and maintain a gate as provided by the statute, and, secondly, that the injury to plaintiff's stock was the result of such negligence. It may be that the gate did not conform to the requirements of the statute; yet unless such negligence was the proximate cause of the accident there can be no recovery.

There is an entire absence of evidence to show that plaintiff's stock strayed upon defendant's right of way by reason of a defective gate, nor is there sufficient evidence to authorize the court or jury in making a fair and legitimate inference that such defective gate was the cause of the accident. But the reverse is indicated by the testimony of the witnesses, as well as the physical facts, that the gate was opened by some person and left open and by this means the accident occurred. As was said by this court in the Kavanaugh case: "So long as the gate remained shut and fastened, the gate was sufficient and plaintiffs' cows were secure. But when the gate was left open in manner as aforesaid, then it became wholly immaterial whether or not the gate was so constructed as to be 'easily opened and shut,' because, being left open, the method of its construction was not, and could not be, the *proximate cause of the injury;* the *opening* was that cause."

Upon the facts as disclosed by the record in this cause the conclusions reached by the Kansas City Court of Appeals were clearly correct. Entertaining the views as herein indicated, the judgment of the circuit court should be reversed, and it is so ordered. All concur.